

UNTED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

DAVID A. STEBBINS                                                              PLAINTIFF

VS                              CASE NO.  1:14cv961 CMH/TCB

EDUCAP, INC., MORGAN DOUGHTY
NICHOLAS HOOD, RICHARD HOOD                                  DEFENDANT
HOOD & STACY, P.A.

### COMPLAINT AND JURY DEMAND

1. Comes now, *pro se* Plaintiff David Stebbins, who hereby submits the following Complaint against Educap, Inc. (to be known, from here on out, as simply "Educap") - a corporation headquartered in Sterling, VA - as well as Arkansas attorneys Morgan Doughty, Nicholas Hood, and Richard Hood, as well as their employer, Hood & Stacy, P.A., for the common law tort of malicious prosecution, as well as for the federal tort of ADA Retaliation in violation of § 503 of the Americans with Disabilities Act (codified 42 USC § 12203).

### I.     FACTUAL ALLEGATIONS

2. ¶¶ 3 – 15 of this Complaint will be spent establishing facts that are necessary to understand this case. If the Court insists on reading about the Defendants' direct actions first, then skip to ¶ 16 of this Complaint, but be warned: The Court is likely to be confused it takes this approach.

**A)     Background**

3. To state a claim upon which relief can be granted for the tort of ADA Retaliation, Plaintiff must plead, among other things, that Plaintiff engaged in one or more statutorily protected activities. See *Haulbrook v. Michelin North America*, 252 F. 3d 696, 706 (4th Cir. 2001). This section of this Complaint will be dedicated to pleading that fact.

4. Plaintiff – a resident of the city of Harrison, Arkansas and of Boone County, Arkansas – has Asperger Syndrome, a disability which severely hinders his ability to socialize with others, make friends, get jobs, get a girlfriend, etc.

5. Because this disability is not obvious (like blindness or paraplegia), many persons do not realize that it even IS a disability, and thus, they believe that they have no obligation under the Americans with Disabilities Act to provide reasonable accommodations for it. This leads to many times when Plaintiff does not get the reasonable accommodations he is supposed to be legally entitled to.

6. Thus, Plaintiff was faced, many many times, with two options: Either suck it up and let people do whatever they want to him and walk all over him, or file suit in federal court. Plaintiff quickly decided that the former was 100% out of the question.

7. Plaintiff could not afford to hire an attorney on an hourly basis, and because discrimination is an extremely complication area of law (indeed, the Defendant's *mindset* is an essential element), it is extremely rare for an attorney to take a case on contingency, especially when the Defendants in those cases *honestly believe that they were doing nothing wrong.*

8. Thus, Plaintiff had no choice but to represent himself *pro se* in these matters.

9. A list of the ADA cases where Plaintiff represented himself are ...

    (a) Case No. 10-3305 in the U.S. District Court for the Western District of Missouri

    (b) Case No. 10-3041 in the U.S. District Court for the Western District of Arkansas

    (c) Case No. 10-5025 in the U.S. District Court for the Western District of Arkansas

    (d) Case No. 10-3086 in the U.S. District Court for the Western District of Arkansas

    (e) Case No. 10-3072 in the U.S. District Court for the Western District of Arkansas

    (f) Case No. 11-3078 in the U.S. District Court for the Western District of Arkansas

(g)     Case No. 11-3057 in the U.S. District Court for the Western District of Arkansas

**B)   Preliminary facts**

10.    This next section will set forth facts and events which Plaintiff freely acknowledges the Defendants in this case had no part of. However, these facts set forth issues which are necessary for the Court to understand the nature of Plaintiff's complaint in *this* case. It may seem as if Plaintiff is going off on a tangent, but he honestly is not.

11.    Plaintiff's decision in ¶ 8 of this Complaint (the decision to represent himself in his lawsuits) did not bode well with the Powers that Be here in Boone County, Arkasnas, who believe that a person should not have the legal or constitutional right to represent themselves.

12.    Thus, because the government of Boone County considers itself above the law[1], they proceeded, in the year of 2011, to frame Plaintiff for a knife attack against his father – who was working in cahoots with the government – so that they could have Plaintiff arrested. That way, Plaintiff would experience incarceration for the first time in his life, so that Prosecuting Attorney Wes Bradford – also a part of the conspiracy – could use the threat of additional incarceration to coerce Plaintiff into ceasing and desisting his *pro se* lawsuits.

13.    On February 8, 2013 (remember this date, as it will be important in a little bit), Plaintiff agreed to one (1) year of probation, and agreed to make payments of $35 per month (remember this amount, as it will also be important) pursuant to this probation, in exchange for dismissal of his charges after probation was completed.

14.    Plaintiff currently has three (3) *pro se* lawsuits pending in federal and Arkansas State courts directly addressing this conspiracy to have him arrested:

---

[1] Literally, Plaintiff could probably make a book the size of the Bible that is composed entirely of case numbers in the Western District of Arkansas – just the case numbers alone – where inmates at the Boone County Detention Center complain about patently unconstitutional conditions of confinement.

    (a)    Case No. 12-3022 in the U.S. District Court for the Western District of Arkansas,

    (b)    Case No. 14-0227 in the U.S. District Court for the Eastern District of Arkansas, and

    (c)    Case No. CV2012-85-4 in the Circuit Court of Boone County, Arkansas.

15.    Again, Plaintiff admits that the Defendants in this case had nothing to do with the above-mentioned actions. However, with these actions established, we can now finally move onto the actions of the Defendants, which Plaintiff really is complaining about:

**C)    Defendant's Adverse Actions.**

16.    Educap are a group of lawsuit sharks. What Plaintiff means by "lawsuit shark" is that they file lawsuits against people, not to silence political critics (such as in the case of SLAPP litigation), but rather, simply for free money. It is the most base of all motives. Lawsuits filed by these sharks may be completely unfounded and completely devoid of any/all evidence, but the shark is in the hopes that their defendants will agree to settle the case, simply to avoid the long, expensive, and stressful legal battle.

17.    Plaintiff coined the term "lawsuit shark" by drawing inspiration from the term "loanshark," a similar practice by criminal organizations where they lend money with extremely high interest rates. These rates often far exceed the usury rates for the applicable state, but that's okay for them, since they have no intention of using the court system to recover the debts; instead, if you don't pay them back, they'd rather just kill you.

18.    On January 2, 2014, Educap – acting by and through the counsel of Morgan Doughty, Nicholas Hood, and Richard Wood (all of whom work for the law firm of Hood & Stacy, P.A.) – filed a Complaint against Plaintiff in the Boone County Circuit Court (Note: In Arkansas, the "Circuit" Courts are the basic trial courts) claiming that Plaintiff entered into a debt contract with them, promising to make consistent monthly payments of approximately $35 per month (notice a

pattern, yet?) and ceased payments in the month of March, 2013 (are you noticing a pattern?). Plaintiff had never done business with – or even heard of – Educap prior to the filing of this lawsuit.

19. However, the Defendants never attached any copy of the written instrument upon which this debt was purportedly based. Even though it is required by Arkansas law (see Arkansas Rule of Civil Procedure 10(d)), no contract was attached.

20. "So what," the Court is probably thinking right now. "Just because they did not attach the contract does not mean that they did not have it. Maybe they just forgot to attach it. That's not 'lawsuit sharking,' as you call it; that's just human error."

21. The problem with this line of thought, however, is that the Defendants actually DID attach *something*. They attached a document that appeared, on its face, to be a contract. This document, however, was conspicuously DEVOID of Plaintiff's signature ... or even the signature of an Educap representative, for that matter! Instead, the Defendants chose to simply attach an affidavit by a man named "Marc Maiorca" – who claims to be an employee of Educap – simply claiming that he believes that Plaintiff had entered into that contract.

22. No longer can the Defendants now argue that their mistake was merely just that: A mere mistake. At this point, only one thing can be inferred from the evidence: The Defendants plainly knew that they did not have the legally required evidence that Plaintiff ever accepted any contract offer from them, and yet, they made the conscious choice to proceed with litigation *anyway*.

23. This conscious choice *alone* should entitle Plaintiff to judgment as a matter of law on the common law tort of malicious prosecution. Even if the Defendants are not "lawsuit sharks," *per se*, even if they are otherwise legitimate lenders who simply misplaced the copy of the contract

that bore Plaintiff's signature, and even if Plaintiff's case was only a single isolated incident, they should still be liable to Plaintiff for the common law tort of malicious prosecution, because they proceeded to harass Plaintiff with litigation despite *knowing* that they did not have enough evidence to prove that he did anything, rather than doing the right thing and take the loss, like they know they should have.

24. And people say that *Plaintiff* is a vexatious filer!

25. Anyway, on March 28, 2013, the Defendants sent a process service agent by the name of Everett Uchtman to serve process on ... Plaintiff's parents. Yes, the Defendants apparently looked up the addresses for the Stebbins family in the phone book and decided "Hey, if we serve process on Mr. Stebbins' parents, rather than on Mr. Stebbins directly, we could increase our chances of obtaining a default judgment!" So,, this process service agent visited the house that Plaintiff's *parents* are currently living in, rather than to Plaintiff's apartment! Even though Plaintiff's mother flatly told Uchtman that Plaintiff did not live there, and even gave Uchtman Plaintiff's address, he nevertheless insisted that she receive service of process on Plaintiff's behalf.

26. This was, no doubt, done in a shameless attempt to increase their odds of obtaining a default judgment against Plaintiff. If the mother had received the service of process, and promised to give it to Plaintiff, without ever giving the agent any indication whatsoever that Plaintiff no longer lived there, THEN you could make the argument that it was good faith, honest mistake caused by a misunderstanding. However, when the process service agent was plainly told, point blank, that Plaintiff did not live there, and he proceeded to conduct service of process anyway, then there is no excuse; he was acting intentionally at that point.

27. The Defendant's actions spoken of in ¶¶ 19 – 24 (failure to attach a contract bearing

Plaintiff's signature) neither excuses nor satisfies the requirements of AR Rule of Civil Procedure 10(d) (see *LVNV Funding, LLC v. Nardi*, 2012 Ark. 460 (2012) holding that a witness affidavit did not satisfy the requirement to attach a copy of the written instrument), so on May 5, 2014, Plaintiff filed a motion to dismiss that lawsuit, claiming both insufficient service of process and failure to state a claim upon which relief can be granted.

28. On May 19, 2014, the Arkansas state judge presiding over that case entered an order dismissing the Defendant's lawsuit against Plaintiff.

29. Plaintiff now seeks for the Defendants to be punished for their lawsuit-sharking.

**D)   Causal Connection**

30. The lawsuit filed against Plaintiff was, by itself, sufficient to support a cause of action for the common law tort of malicious prosecution. However, it also was most likely done specifically to persecute Plaintiff for his lawsuits.

31. Notice how the Defendants' lawsuit alleged facts that perfectly synced up with Plaintiff's criminal proceedings. They alleged that Plaintiff failed to make monthly payments at exactly the time Plaintiff's probation began, and that the payments in question were exactly what Plaintiff was paying during probation.

32. These two facts are so astronomical that they cannot possibly be coincidence. Thus, only two possibilities exist for how this pattern could possibly have emerged:

- **POSSIBILITY NO. 1:** Plaintiff *was* making payments on this debt, but stopped making those payments at the start of his probation, in order to make room in his monthly budget for the probation payments.

- **POSSIBILITY NO. 2:** The Defendants were contacted by some government officer, due to their reputation as a lawsuit shark, and were asked by said officer to continue to harass Plaintiff in their place, apparently in an attempt to give Plaintiff a taste of what they considered to be his own medicine.

33. No doubt, the Defendants were planning on advocating for Explanation No. 1, except that

the lawsuit was preliminarily dismissed. Rotten luck.

34. The only question remaining is... is Explanation No. 2 more probable than Explanation No. 1? That is, after all, the burden of proof in this case: Preponderance of the evidence, meaning that the evidence must be more in Plaintiff's favor than in the Defendants'.

35. Because the actions spoken of in ¶¶ 16 – 29 of this Complaint conclusively demonstrate that the Defendants completely made up their cause of action against Plaintiff, Possibility No. 1 is effectively refuted, leaving Possibility No. 2 as the only remaining possibility, via process of elimination.

## II. LAW AND ARGUMENT

36. The following law governs this case:

### A) Jurisdiction and Venue

37. Since Educap is based in Sterling, Virginia, venue is proper in this Court. See 28 USC § 1391(b)(1).

38. This Court has subject-matter jurisdiction over the tort of ADA Retaliation. See 28 USC § 1331.

39. Because this Court already has jurisdiction over the claim of ADA Retaliation, it can exercise supplemental jurisdiction for the common law tort of malicious prosecution. See 28 USC § 1367.

40. Also, because of the punitive damages Plaintiff is requesting in connection with the common law tort of malicious prosecution, this Court can also exercise diversity jurisdiction over that claim. See 28 USC § 1332.

### B) The Complaint

41. At the pleading stage, the Court must accept all of Plaintiff's factual allegations as true

and in a light most favorable to the Plaintiff. See *Edwards v. City of Goldsboro*, 178 F. 3d 231, 244 (4th Cir. 1999). Because Plaintiff is proceeding *pro se*, he has the right to have his pleadings construed liberally. See *Haines v. Kerner*, 404 US 519 (1972).

42. Plaintiff is applying for leave to proceed *in forma pauperis* in this case. This means that the Court has discretion to dismiss the action if the claim is frivolous, fails to state a claim upon which relief can be granted, or demands monetary relief from an entity (such as a government) who is immune from such relief. See 28 USC § 1915(e)(2)(B).

43. However, none of the grounds listed in that statute are applicable here.

44. First and foremost, there are two ways that a complaint can be frivolous: Legally and factually. Whether a complaint is legally frivolous is governed by the precedent of *Neitzke v. Williams*, 490 US 319 (1989). Whether a complaint is factually frivolous is governed by the precedent of *Denton v. Hernandez*, 504 US 25 (1992).

45. To be legally frivolous, the Complaint must lack even an arguable or theoretical basis in law. A Complaint is not legally frivolous "[w]hen a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff." See *Neitzke* at 328.

46. As Plaintiff will establish in ¶¶ ## - ##, this Complaint is not based on "arguable" legal theories; it is based on clearly established legal precedents. Thus, this Complaint is not legally frivolous.

47. To be factually frivolous, the factual allegations in the Complaint must be fanciful, fantastic, or delusional. See *Denton* at 32-33. The Supreme Court goes out of its way to warn district courts that a complaint is not factually frivolous "simply because the court finds the plaintiff's allegations unlikely."

48. The factual allegations contained in ¶¶ 2 – 35 of this Complaint, fall far short of this exacting standard. They are wholly consistent with known behavioral science, and the Defendants are accused of being motivated by the most base motive of all: Greed.

49. The only way these factual allegations could be considered "fanciful" or "delusional" is if the Court knew the Defendants personally, and simply *trusted* that these Defendants would not do that, and even if that were the case ...

(a) ... that judge needs to recuse himself, right now, due to a clear conflict of interests.

(b) ... such trust would effectively amount to the court finding the factual allegations to be unlikely, which is specifically forbidden under the *Denton* precedent.

50. So, as you can see, this case is not subject to dismissal under 28 USC § 1915(e)(2)(B)(i).

51. Nor is the case subject to dismissal under 28 USC § 1915(e)(2)(B)(ii), or failure to state a claim. When dismissing for failure to state a claim, the Court really does have to accept as true all factual allegations – no matter how delusional – that cannot be judicially noticed to the contrary. See *Edwards v. City of Goldsboro*, 178 F. 3d 231, 244 (4th Cir. 1999).

52. The provisions of 28 USC § 1915(e)(2)(B)(iii) – seeking monetary relief against an immune defendant – is completely inapplicable in this case in the first instance, and thus warrants no discussion.

53. Thus, Plaintiff is entitled to have his Application for Leave to Proceed *In Forma Pauperis* granted.

C) **Malicious Prosecution – elements and discussion**

54. Since the common law tort of malicious prosecution is, normally, a state tort, it is clear that state substantive law should be applicable. However, it is less clear to Plaintiff specifically *which* state's law should be applicable? Should it be Virginia, the state where the malicious

prosecution claim is being filed, or Arkansas, the state where the act of malicious prosecution actually occurred?

55. However, according to Plaintiff's legal research, it does not matter, at least not in this instance. Whether the common law tort of malicious prosecution is governed by the precedent of *Reilly v. Shepherd*, 643 S.E.2d 216, 218 (2007) (for Virginia) or the precedent of *Burkett v. Burkett*, 236 SW 3d 563, 569 (2006) (for Arkansas), both precedents require the same elements to be pled – and subsequently proven – by the Plaintiff.

56. Those elements are ...

   (a)   ... that the Defendant initiated or continued a legal proceeding against Plaintiff

   (b)   ... the Defendants acted with malice in initiating this proceeding

   (c)   ... this proceeding lacked probable cause

   (d)   ... the proceeding was terminated in Plaintiff's favor (or, in Virginia, it simply must be terminated "in a way not in the Plaintiff's disfavor").

57. The only difference is that, in Arkansas, damages are a fifth essential element, which suggests that, in Arkansas, a cause of action for malicious prosecution cannot proceed when the Plaintiff is requesting injunctive relief alone. This is fine, as Plaintiff is going to be requesting compensatory and punitive damages, anyway (See Section III of this Complaint).

58. Plaintiff – in Section I of this Complaint (and later Section III) has sufficiently pled the facts necessary to state a claim for malicious prosecution, as outlined as follows:

59. Plaintiff has clearly plead the element of "legal proceeding initiated by the Defendant against the Plaintiff," as Plaintiff has, quite clearly, alleged that the Defendants filed a debt recovery lawsuit against Plaintiff in an Arkansas Court.

60. Plaintiff has plead the element of malice in two separate ways:

(a) First, Plaintiff clearly has plead that the Defendants are mere lawsuit sharks who are motivated entirely by greed rather than justice.

(b) In addition, Plaintiff has plead – in ¶¶ 19-23 of this Complaint – that the Defendants plainly knew that they did not have enough evidence to support a judgment against Plaintiff, and decided to proceed with the litigation, anyway, for no other reason than, they just wanted money. This, by itself, is sufficient to support the element of malice, even if the Defendants are not lawsuit sharks.

61. Plaintiff has sufficiently plead the element of "lack of probable cause," again in two separate ways:

(a) Plaintiff has plead that the Defendants completely made up the debt that Plaintiff had purportedly failed to repay. Plaintiff never did business with – or even heard of – the Defendants prior to the previous lawsuit.

(b) Alternatively, lack of probable cause is evident from the following legal citations:

   i. In both Virginia and Arkansas, probable cause exists when the "totality of the circumstances" would lead a reasonable person to believe that the accused person has committed some violation of law. See *Fairley Jones v. Commonwealth of Virginia*, 670 SE 2d 727, 731 (2009) and *Johnny Morgan v. State of Arkansas*, 308 SW 3d 147, 154-155 (2009).

   ii. Because the *totality* of the circumstances must be considered, evidence which tends to exonerate the accused must also be considered; see *Merchant v. Bauer*, 677 F. 3d 656, 665 (4th Cir. 2012) and *Kuehl v. Burtis*, 173 F. 3d 646, 650 (8th Cir. 1999).

   iii. Here, no reasonable person (as defined by the common law doctrine of the same name) would believe that Plaintiff owed the Defendants a penny, when there was not

even the most basic of all evidence – Plaintiff's signature – to suggest that he ever agreed to jack squat with them.

62. Plaintiff has plead the element of "termination in Plaintiff's favor," in ¶ 28 of this complaint. Simple as that.

63. Last but not least, Plaintiff will sufficiently plead the element of "damages" (just in case this Court decides that Arkansas law applies in this case) in Section III of this Complaint.

**D) ADA Retaliation**

64. Next, we have the tort of ADA Retaliation. Again, it is difficult for Plaintiff to assess whether the laws of the 4th Circuit (where this case is being filed) or the 8th Circuit (where the act of retaliation occurred) is controlling. Thus, to avoid confusion, Plaintiff will simply cite the precedents for each circuit.

65. Depending on which circuit is the controlling case law, the governing precedent would be either *Haulbrook v. Michelin North America*, 252 F. 3d 696, 706 (4th Cir. 2001) or *Amir v. St. Louis University*, 184 F. 3d 1017, 1025 (8th Cir. 1999). Lucky for us, those cases require the Plaintiff to plead – and subsequently prove – the same three essential elements.

66. Those elements are ...

(a) ... that the Plaintiff engaged in one or more statutorily protected activities,

(b) ... that the Defendants engaged in some action which was adverse to the Plaintiff, and

(c) ... that the adverse action was caused by the statutorily protected activities.

67. Again, Plaintiff's home region has an extra element: "A person cannot show that he engaged in a statutorily protected activity without first demonstrating that he had a good faith reasonable belief that the alleged retaliator was engaging in discriminatory activity." See *Amir* at 1025.

68. Plaintiff has plead – in Section I, Subsection A of this Complaint – the element of "statutorily protected activity."

69. In the event that the 8th Circuit's precedents are what controls in this case, Plaintiff still has the element of "good faith reasonable belief" sufficiently plead. In Section I, Subsection A of this Complaint, Plaintiff explains to the Court that the reason for his large number of lawsuits is NOT because Plaintiff is simply a vexatious filer, but rather, because Plaintiff has a disability that makes him especially susceptible to discrimination.

70. If the Court honestly believes that Plaintiff has not sufficiently plead the element of "adverse action," then the Court is probably determined to throw this case out anyway in an act of judicial corruption, and nothing Plaintiff says will have any effect.

71. In Section I, Subsections B and D, of this Complaint, Plaintiff sufficiently alleged elements of causal connection. Plaintiff pointed out how the Defendants knew things about Plaintiff's history that could only make any sense at all if they had conspired with Boone County to file a lawsuit against Plaintiff (either that, or the debt was in fact wholly legitimate, but that has already been refuted by the complete lack of Plaintiff's signature).

72. Thus, Plaintiff has sufficiently plead facts which state a claim upon which relief can be granted ADA Retaliation.

## III. INJURIES AND DAMAGES

73. Plaintiff requests the following relief in connection with this Complaint.

**A) $5.50 in compensatory damages**

74. When Plaintiff filed his motion to dismiss as set froth in ¶ 27 of this Complaint, he incurred costs in the amount of $5.50 in doing so.

75. Plaintiff filed eleven (11) pages worth of documents. That is composed of two (2) pages

for the Motion itself, two (2) pages for the affidavit from Rita Stebbins (in order to prove that process was served on her, rather than on Plaintiff himself), and seven (7) pages for the Brief in Support of the Motion.

76. Plaintiff needed to print out the original in order to file with the Boone County Circuit Court Clerk's Office, but then, he had to pay the Clerks' office for a copy of the Motion, so that he could serve it on the Defendants (since it just goes without saying that every filing with the Court must be served on all parties). This makes for a total of 22 pages that Plaintiff had to pay for in order to file the motion.

77. The Court can take judicial notice – since it is on the official website of the Boone County Local Government (which is www.boonecountyar.com) – that pages cost $0.25 each in Boone County.

78. Fortunately, Plaintiff was able to serve co-Defendants Doughty, the Hood Brothers, and Hood & Stacy, PA via email, so Plaintiff did not incur any postage costs in the filing of that motion.

79. This amounts to a total of $5.50 in costs that Plaintiff incurred in having to file this motion that he never should have been put to the task of filing in the first place.

80. Plaintiff was never compensated for his costs in the previous case; therefore, he asks that he be compensated for these expenses, in this case, as a compensatory damage.

81. Plaintiff admits that this compensatory damage is small. However, it should be sufficient to A) satisfy the essential element of "damages" as set forth in ¶ 57 of this Complaint, and B) compel the court to entertain Plaintiff's next request for damages, which is the most important one.

**B)   Emotional Distress Damages**

82. In addition to the compensatory damages, Plaintiff also requests $250,000 in emotional distress damages.

83. Why so much, for just a tiny lawsuit that was resolved within a month? Well, it's because the clear intent on the part of the Defendants to continue the harassment that was perpetrated onto Plaintiff (as described in Section I, Subsection B of this Complaint) caused Plaintiff, upon receiving the lawsuit, to relive all of those horrible memories. Memories of events where he did not even know if he was going to make it out of their *alive*, let alone in one piece.

84. See, this is called the "eggshell skull rule," and it is also a facet of common law. This rule holds one liable for all consequences resulting from his or her tortious activities leading to an injury to another person, even if the victim suffers an unusually high level of damage. The term implies that if a person had a skull as delicate as that of the shell of an egg, and a tortfeasor who was unaware of the condition injured that person's head, causing the skull unexpectedly to break, the defendant would be held liable for all damages resulting from the wrongful contact, even if the tortfeasor did not intend to cause such a severe injury.

85. Because Plaintiff was in a very vulnerable state, and had just gotten out of absolute torture, he was especially susceptible to emotional distress damage by being served with a frivolous lawsuit.

### C)   Punitive damages

86. Plaintiff demands ten million dollars ($10,000,000) in punitive damages, against all five defendants – for a total of $50,000,000 – in order to punish the Defendants for their lawsuit-sharking.

87. This amount of damages is a legitimate amount, and has been upheld, by the Supreme Court, as a fair amount of punitive damages when the Defendants engage in extremely egregious

conduct. See *TXO Production Corp. v. Alliance Resources Corp.*, 509 US 443 (1993). There are few things more egregious than plainly knowing that what you are doing is illegal, and choosing to do it anyway. See *TXO* at 451 ("What could be more egregious than the vice president of a company saying, well, testifying and saying that he knew all along that this property belonged to Tug Fork?").

88. Yes, this is a lot of money, but Plaintiff is suing today for more than monetary gain (unlike the Defendants, who could not care less who they harass, as long as their bottom line gets bigger). Instead, he is doing the public a service with this lawsuit: By bringing down a lawsuit shark.

89. The punitive damages NEED to be massive in this case, since the goal here is to deter the Defendants from filing lawsuits in the future when they plainly know that they are not entitled to judgment. The damages need to be large enough to send a chilling effect, so that they only file lawsuits if they honestly believe, in good faith, that they are entitled to judgment as a matter of law.

90. The lawyers – Morgan Doughty and the Hood Brothers, as well as their law firm, Hood & Stacy, PA – also need to be taught a lesson here. They need to be taught not to take cases they plainly know lack even colorable merit. The whole reason we have attorneys in the first place is to be the voice of reason whenever an emotionally charged client wants to file a suit that the attorneys knows is meritless. Attorneys need to know that, no matter how much money their clients are paying them to ignore their legal training and file these lawsuits anyway, it simply is not worth it.

91. After all, if lawyers are not expected to know, on their clients' behalf, what cases have merit and what cases are frivolous, then why do we even have lawyers?

92. Thus, Plaintiff's demand for punitive damages, although massive, is nevertheless warranted on the merits of this action.

**D) Injunction**

93. Plaintiff, pursuant to his cause of action for the tort of ADA Retaliation, seeks an injunction ordering the Defendants – all of them, both Educap and the lawyers – to permanently and perpetually cease and desist any/all adverse actions against Plaintiff – including litigation – unless they can prove that the adverse action is done for a legitimate nondiscriminatory purpose.

94. Plaintiff believes that it is imperative that the Defendants hold the burden of proof on the issue of "causal connection" in all future claims. Motives are often complex and difficult to prove, so sometimes motives must be presumed. See *United States v. Goodwin*, 457 US 368, 373 (1982). One time where such motive should be presumed is when the Defendants already have a history of discrimination and retaliation.

95. Thus, if Plaintiff can prove that the Defendants engaged in an act of ADA Retaliation, he asks that this Court issue an injunction ordering them to hold the burden of proof on all future adverse actions.

**IV. JURY DEMAND**

96. In the event that a trial is needed to determine any issues of fact, Plaintiff asks that this case be tried by a jury of his peers.

**V. CONCLUSION**

97. To wrap this Complaint up, let us recap the points:

(a) Plaintiff has Asperger Syndrome, a disability which makes him especially susceptible to discrimination.

(b) Plaintiff has already been persecuted before by the Government of Boone County,

Arkansas because of the ADA discrimination lawsuits he has filed.

(c) On January 2, 2014, the Defendants all grouped together and filed a patently frivolous lawsuit against Plaintiff, despite plainly knowing that the lawsuit lacked any evidentiary foundation whatsoever.

(d) In the lawsuit, they alleged facts which can only make sense if they were either retaliating against Plaintiff for his litigation practices, or if the debt was in fact legitimate. Since the debt, clearly, was not legitimate, that proves, via process of elimination, the tort of ADA Retaliation.

(e) Plaintiff seeks punitive damages large enough to chill future would-be lawsuit sharks from filing future lawsuits which they plainly know lack an evidentiary foundation.

(f) Plaintiff also seeks injunctive relief against the Defendant, ordering them to cease and desist any/all adverse actions against Plaintiff unless they can first prove that the adverse actions are done for legitimate, nondiscriminatory reasons.

98. Wherefore, premises considered, Plaintiff requests that the above-mentioned relief be granted, costs incurred be awarded, and any other relief the Court finds appropriate.

*David Stebbins*
David Stebbins
123 W. Ridge St.,
APT D
Harrison, AR 72601
870-204-6516
stebbinsd@yahoo.com