## UNTED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA ALEXANDRIA DIVISION

FILED
MAIL ROOM

NOV 1 8 2014

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VA

DAVID A. STEBBINS                                              **PLAINTIFF**

VS                                **CASE NO. 1:14-cv-00961**

EDUCAP, INC.                                               **DEFENDANT**

### RESPONSE IN OPPOSITION TO [026] DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Comes now, *pro se* Plaintiff David Stebbins, who hereby submits the following Response in Opposition to Dkt. 26, the Defendant's Motion for Summary Judgment.

### NO PRIMA FACIE ENTITLEMENT TO RELIEF

1.      First of all, the Defendants have failed to show a *prima facie* entitlement to summary judgment. Their grounds for summary judgment is based entirely on the statements of their own employees (who, by nature of being employed by the Defendant, are automatically presumed to have a career interest in the outcome of this proceeding) and exhibits which they have complete control over.

2.      In ruling on a motion for summary judgment, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." See *Reeves v. Sanderson Plumbing Products, Inc.*, 530 US 133, 150 (2000). See also *Dennis v. Columbia Colleton Medical Center, Inc.*, 290 F. 3d 639, 645 (4th Cir. 2000).

3.      Here, the Defendant is asking the Court to do … exactly that. They are asking the Court to simply believe the Defendant's word over Plaintiff's, which is the exact opposite of summary judgment. This is patently against clearly established precedent government motions for summary judgment.

4.      Plaintiff is aware that he "cannot rely on mere metaphysical doubt" to survive summary judgment (see *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). However, that precedent, on its face, is only applicable in the first place "[w]hen the moving party has carried its burden under Rule 56(c)." The Defendant has not done so, here. Indeed, the Defendant is asking the Court to do the complete opposite of what summary judgment is supposed to be: The Defendant is asking the Court to decree – a la a bench trial – that their evidence is more probative than Plaintiff's.

5.      Last but not least, Plaintiff should be entitled the benefit of full discovery – including the chance to cross-examine the Defendant's witnesses and secure evidence of his own – before he is denied his day in court. The fact that the Defendant is, by its own admission, producing evidence which was never before seen means that there is still a genuine dispute of material fact, even if it may cease to be disputed if no further evidence is produced.

<strong>STATEMENT OF DISPUTED FACTS</strong>

6.      Plaintiff maintains that the Defendant's offering of Undisputed Fact No. 1 is, indeed, very disputed.

7.      To support this, please find, attached to this Response, an affidavit from Rita Stebbins, the mother of Plaintiff, attached hereto as Exhibit 1.

8.      Plaintiff disputes that he ever entered into any contract, debt, or promissory note with the Defendant. See Exhibit 1, ¶ 4.

9.      For the first time, the Defendants have attached a contract that appears, on its face, to bear Plaintiff's signature. However, this signature is not Plaintiff's. Indeed, this Court has, by this point in time, received several samples of Plaintiff's signature. The signature offered on Page 6 of the Defendant's Exhibit 1 looks only virtually nothing like Plaintiff's handwriting.

10.     Specifically, the signature that the Defendants attach is much neater than Plaintiff's handwriting. Plaintiff learned this trick from his own mother, who deliberately makes her signature as sloppy as possible, so it is harder for people to copy it. See Exhibit 1, ¶ 9.

11.     The signature that appears in the Defendant's exhibits, however, is so neat that it looks like it was pulled out of a textbook that was designed for third graders who were just learning how to write in cursive for the first time! Every letter is evenly-spaced. They are all tilted at the exact same 25-30 degree angle (give or take a few degrees). The dots are hovering directly over the cursive i's, and are not even slightly off. The loops in the cursive e's and b's seem to be perfectly circular (almost as if they used a compass to draw the circles).

12.     Meanwhile, the signatures attached to the end of Plaintiff's pleadings in this case are crunched together. Letters are crunched together, as if Plaintiff had only a small space to write the signature (even though he had an entire three inches to write the signature), especially near the end. The angles are all mixed up, and sometimes, pen strokes from one letter can cross into other letters (for example, in Plaintiff's signature of his application for leave to proceed *in forma pauperis*, you can see that the cross on the "t" in his last name across crosses over through the two "b's," and even covers up the dot hovering over the "i").

13.     So, Plaintiff can indeed say, with 100% certainty, that that is not his signature on that page. The Defendant just made it up.

     (a)     Now, please remember: Plaintiff's assessment of the handwriting is based on what little clarity the Defendant's exhibit actually provides! Exhibit A, Page 6 of their Memorandum is so blurry and smudgy that most of the ***printed*** words are completely illegible! It's weird, because these are the only pages like that, in all of their 50 pages of their memorandum.

      (b)     It's almost as if they singled that page out for special treatment … hmmmm …

      (c)     In any event, the lack of clarity makes their evidence far from "undisputed." This is the equivalent of having camera footage so blurry that you can only see the culprit's race and gender, or an audiotaped confession with so much background noise you can't hear a word anyone is saying.

14.     In addition, there is real – *actual reason*, not just " mere speculation or the building of one inference upon another" (such as is specifically disallowed in the precedent of *Beale v. Hardy*, 769 F. 2d 213, 214 (4th Cir. 1985)) – to suggest that the Defendant obtained the information depicted in their exhibits through illicit means. After that, the authenticity of this evidence (e.g. whether or not it was forged) – and, by proxy, its value in a motion for summary judgment – would automatically come into dispute.

15.     The *real reasons* Plaintiff is referring to are hereby attached as Exhibit C. This news article documents an investigation launched by New York Attorney General into multiple major private student loan creditors – Educap included – on allegations of corruption and kickbacks between student loan creditors and institutions of higher education.

16.     From these investigations, it is very safe to assume that Educap and the University of Arkansas (and, by proxy, the State of Arkansas) have a very cozy relationship. If Educap wanted to forge evidence against Plaintiff, the University of Arkansas – given this clear connection of corruption and kickbacks – would easily be willing to provide the necessary data for Educap to use.

17.     If these allegations of corruption are true, a reasonable jury could conclude that NOTHING the Defendant or any of its employees says has any credibility whatsoever. Remember, witness credibility is exclusively the jury's domain.

18.     Of course, there is always the possibility that the Defendant could produce some evidence to show that they were dismissed as a Defendant in the action brought by the New York Attorney General.  However, Plaintiff defers the Court to the plea he made in ¶ 5 of this Response: Plaintiff asks for the benefit of full discovery before summary judgments are reached.

19.     Thus, the validity of Plaintiff's debt contract is far, far, far from undisputed.  The signature purporting to be Plaintiff's does not match his handwriting (assuming you can even read it anyway); there is substantial reason to believe that the Defendants could have obtained the information they got from illicit sources; and Plaintiff has produced the written testimony of a (somewhat) disinterested witness to corroborate his version of events. What more do you need?

## WHY THE MOTION SHOULD BE DENIED

20.     First, please find attached a Affidavit from Plaintiff. This affidavit will not be referenced anywhere in this Response Brief, but it is being offered for the sake of Plaintiff's own testimony counting as evidence.

21.     That being said, now that Plaintiff has come forth with specific facts, showing a genuine material dispute as to whether Plaintiff ever owed the Defendant a single penny, the rest of the Defendant's motion – insofar as it concerns Plaintiff's claim for malicious prosecution, falls apart as well.

### Sufficient Pleading of Malice

22.     First, Plaintiff has indeed alleged sufficient facts to establish the element of malice.  With it being subject to genuine dispute whether or not Plaintiff indeed did enter into any sort of agreement with the Defendant, it is, subsequently, still plausible that the Defendant instituted the action for purposes of A) extorting settlement money out of Plaintiff, and/or B) continuing the harassment that Plaintiff's government officers began.  Either of these would be sufficient to

support the element of malice, according to the definition the Defense themselves offer.

### Sufficient Pleading of "Lack of Probable Cause"

23.    Plaintiff has also alleged facts sufficient to show a lack of probable cause. With the authenticity of the Defendant's newly-attached exhibits called into question, the Defendants are, once again, faced with allegations that they acted in the clear absence of "facts upon which the claim is based," something the Defendant itself – by reason of its citation of the Restatement (Second) of Torts § 675 – admits to being sufficient to support a lack of probable cause.

24.    Second, contrary to the Defendant's assertions, their failure to attach the contract containing Plaintiff's signature is more than a mere "pleading deficiency." They sued Plaintiff for a contract … and never attached a contract! They failed to attach the most fundamental and basic of all proofs. Without a contract, there is no contract dispute.

25.    The lack of a contract in a breach-of-contract suit satisfies the Defendant's own proposed criteria for lack of probable cause. Specifically, "the validity of the claim under the applicable law." Nobody could possibly legitimately believe that you do not need a contract in order to prevail on a breach-of-contract suit. Even small children understand this basic concept.

26.    Thus, Plaintiff has, indeed, plead sufficient facts to establish a cause of action for the common law tort of malicious prosecution.

### Defendant's insistence on the physically impossible, to a standard they know is not required of Plaintiff.

27.    Next, in response to Plaintiff's Complaint, where he states that he had never done business with, or even heard of, the Defendant prior to the commencement of this action, the Defendant replies "Plaintiff has offered nothing more than unsupported self-serving statements that he does not owe the EduCap debt to support this allegation."

28.    Remember that Plaintiff's complaint is a complete *lack* of any prior contact! Plaintiff

asks:  What is he supposed to offer?  How exactly does one offer evidence to show proof that there is nothing to show?  Doesn't that put Plaintiff in a Catch-22?

29.     Plaintiff is not conceding that he cannot prove anything.  Rather, Plaintiff is of the opinion that he is not required, as a matter of law, to show proof of a lack of proof.

30.     Think about it:  Suppose this case were to go to discovery, and Plaintiff were to serve on the Defendant a request, under Fed.R.Civ.P. 34, to produce "all records of all communications Defendant has had with the government officials who operate in Boone County, Arkansas and the surrounding area."  Suppose the Defense responds by saying that … there are no such communications to show records of.

31.     Would the Defendant subsequently be required to produce actual evidence – beyond their self-serving statements – to show that there is nothing for them to produce?  By the Defendant's own logic, yes they would.  But that is not the logic that the Courts follows.  The Courts follow the logic that you are not required to produce what simply does not exist, unless the opponent can prove that it did indeed exist.

### Defendant believes that their evidence is all that matters.

32.     The Defendant next asserts "Plaintiff's statements … are contradicted not only by the affidavit attached to the Collection Action Complaint, but also by the account documents and affidavit filed with the instant Motion."

33.     Plaintiff has already addressed this issue in-depth.  Defendant is not entitled to judgment as a matter of law, simply because they say so.  They are not entitled to summary judgment, simply because they have what they consider to be contradictory evidence.

34.     The purpose of summary judgment is not to try the facts, but to determine if there are any facts to be tried.  If the Defendant has evidence of their own to refute Plaintiff's evidence, that

does not mean that the Defendant is entitled to prevail; it means that the issues are, in fact, disputed!

### Federal courts always follow their own procedural law, regardless of controlling substantive law.

35.     The Defendant then goes on to argue that "The mere statement that a defendant's conduct was malicious is not sufficient to plead the elements of malice," citing the precedent of *Perrodin v. Rooker*, 908 S.W.2d 85, 87 (Ark. 1995) in support of this assertion.

36.     The precedent of the *Perrodin v. Rooker* does indeed state that a mere conclusion is insufficient.  However, that precedent is not controlling on this case.

37.     Perrodin upheld that mere conclusions are insufficient, citing Rule 8(a)(1) of the *Arkansas* Rules of Civil Procedure, as opposed to the *Federal* Rules of Civil Procedure. "Arkansas is a state which requires *fact* pleading. ARCP Rule 8(a)(1). The pleader must set forth more than mere conclusions." See *id* at 87.

38.     The equivalent *Federal* Rule of Civil Procedure is Rule 8(a)(2), which states that "a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief."  Meanwhile, Rule 8(a)(1) of the *Arkansas* Rules of Civil Procedure states, in pertinent part, that "a claim for relief ... shall contain a statement in ordinary and concise language *of facts* showing ... that the pleader is entitled to relief."

39.     Indeed, the Judiciary of the State of Arkansas case law has always acknowledged this distinction:

(a)     *Harvey v. Eastman Kodak Co.*, 610 SW 2d 582, 584 (Ark. 1981)

"Since Rule 12(b)(6) tests the sufficiency of the pleadings, it is necessary to read it in conjunction with Rule 8
...
Unlike our own rule, Rule 12(b)(6) of the Federal Rules provides for dismissal of a complaint for 'failure to state *a claim* upon which relief can be granted.'

...

These two rules establish for the federal courts what is commonly known as 'notice pleading.'"

(b)    *Treat v. Kreutzer*, 720 SW 2d 716, 717 (Ark. 1986)

"We specifically rejected the theory of notice pleading in Harvey v. Eastman Kodak Co., 271 Ark. 783, 610 S.W.2d 582 (1981), noting that, unlike the comparable federal rule, Ark.R.Civ.P. 8(a) requires a statement of 'facts showing the pleader is entitled to relief.'"

(c)    *McKinney v. City of El Dorado*, 824 SW 2d 826, 828 (Ark. 1992)

"Arkansas does not follow the federal rule which allows 'notice pleading;' instead, our rule, ARCP Rule 8(a), requires what we have already stated above, i.e., a statement of facts showing the pleader is entitled to relief."

(d)    *Arkansas Department of Environmental Quality v. Brighton Corp.*, 102 SW 3d 458,

463 (Ark. 2003)

"This court has stated many times that these two rules must be read together in testing the sufficiency of the complaint; we have stated with equal frequency that facts, not mere conclusions, must be alleged. This court has specifically and deliberately rejected the theory of notice pleading."

40.    This is an important distinction to make, since it is black letter law that federal courts always apply their own procedural law, regardless of which substantive law applies. This precedent is so well-established that Plaintiff does not even have to cite any case law to show it.

41.    Indeed, case law interpreting the *Federal* (as opposed to Arkansas) Rules of Civil Procedure have echoed that the purpose of pleadings is to facilitate litigation on the merits, thus requiring only short and concise statements:

"The respondents also argue that the complaint failed to set forth specific facts to support its general allegations of discrimination and that its dismissal is therefore proper. The decisive answer to this is that the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. The illustrative forms appended to the Rules plainly demonstrate this. Such simplified notice pleading is made possible by the liberal

> opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues. Following the simple guide of Rule 8 (f) that 'all pleadings shall be so construed as to do substantial justice,' we have no doubt that petitioners' complaint adequately set forth a claim and gave the respondents fair notice of its basis. The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits."
>
> See *Conley v. Gibson*, 355 US 41, 47-48 (1957) (citations and quotations omitted)

42.   Thus, contrary to the Defendant's assertions, the precedent of *Perrodin v. Rooker* can go take a hike, as far as this Court is concerned. At this point, the Defendant may as well be citing case law from the *Afghanistan* Supreme Court!

### Lack of probable cause indeed can lead to malice.

43.   Next, the Defendant cites the precedent of *Farm Serv. Co-op., Inc. v. Goshen Farms, Inc.*, 590 S.W.2d 861, 866 (Ark. 1979), to support its assertion that "an allegation of malice does not equate to lack of probable cause."

44.   Plaintiff is beginning to wonder if the Defendants are just randomly citing Arkansas law, in the hopes that the Court will just take the Defendant's word for it and not actually go and look at the case law. Because, once again, Plaintiff needed only to conduct a summary analysis of the cited material in order to find a gaping hole the Defendant's logic.

45.   At first, it seems like the Defendant's citation is accurate. The case law says:

> "Appellant alleged that there was no probable cause for any of the actions by Melbourn or Goshen, and that they were brought maliciously. Although both are essential elements of the tort of malicious prosecution, malice and probable cause are not convertible terms and neither follows as a legal presumption from the other. The two elements must concur." (internal citations and quotations omitted)

46.   However, literally one sentence later, the precedent says this:

> "Although a jury may infer malice from lack of probable cause, lack of probable cause may not be inferred from malice."

47. So, as you can see, the Defendant is clearly mistaken. Lack of probable cause can, indeed, be used to support a finding of malice; it just cannot work in reverse.

## "Plaintiff's default" is NOT undisputed!

48. This one will be quick, since it is merely repeating previous arguments.

49. The Defendant states "EduCap has a right to seek collection of the debt upon Plaintiff's default, which is undisputed."

50. IT IS NOT UNDISPUTED!!!  See ¶¶ 6-19 for details.

51. Moving on.

## Plaintiff has requested injunctive relief.

52. Turning to Plaintiff's claim of Retaliation, the Defendant appears to concede that they are subject to the remedial provisions of 42 U.S.C. § 12188, but assert two things:

    (a)  Plaintiff cannot recover monetary damages under that remedial statute, and

    (b)  Plaintiff has not requested injunctive relief.

53. Both of these are patently false, but Plaintiff will address the second one first, since it is easier to refute.

54. Plaintiff has, indeed, requested injunctive relief.  See ¶¶ 93-95 of the Complaint.  There. Done.

55. That said, let us move on to …

## Plaintiff is entitled to damages if he can prove retaliatory intent.

56. The Defendant seems to concede that the substantive law of the Eighth Circuit – as opposed to the Fourth Circuit – controls Plaintiff's Retaliation claim, as evidenced by their citation of the precedent of *Amir v. St. Louis University* and various other 8th Circuit precedents.

57. That being said, Plaintiff is entitled to recover monetary damages against places of public

accommodation if he can show that the Defendant acted with a blatant discriminatory or retaliatory *intent*. See *Meagley v. City of Little Rock*, 639 F. 3d 384 (8th Cir. 2011).

58.     The Defendant has cited a 1st Circuit case to support their claim. However, that precedent is, at best, persuasive precedent. However, the Defendant themselves have already conceded that 8th Circuit substantive case law is controlling on this matter, meaning that Plaintiff's precedent is *binding* precedent.

59.     That being said, ¶¶ 30-35 has alleged facts that cannot possibly be construed as anything other than "a retaliatory intent." In fact, in the *Meagley* case, the adverse action was a negligent failure of the zoo staff to administer their typical reasonable accommodation (see *id* at 387: "No zoo employee testified at trial that Meagley or her son in law was provided with the scooter's operating instructions or the warning to slow down when traveling over inclines"). Thus, it is entirely plausible that the act of discrimination was a mere mistake.

60.     In this case, however, the Defendants do not get that benefit of the doubt. Either Plaintiff is not going to be able to, consistently with the terms of his Complaint, prove the element of causal connection at all, or the Defendant's actions are inherently malicious.

61.     Thus, contrary to the Defendant's assertion, the ADA does indeed equip Plaintiff with a private cause of action against Educap.

### Defendant's argument against the element of "statutorily protected activity" is just plain frivolous and worthy of sanctions.

62.     This is, hands down, the most ridiculous and ludicrous argument the Defendant has made this entire motion. This is saying a lot, considering the Defendant is asking the Court to violate literal centuries of black letter law by weighing the evidence on a motion for summary judgment (as opposed to weighing the evidence in a bench trial).

63.     The Defendant argues that the Court should take judicial notice that Plaintiff's ADA

litigation history did not include Educap until this point in time (something Plaintiff concedes to being true). As such, they argue, the litigation history is not considered a "statutorily protected activity" as far as Educap is concerned.

64.     So basically, the Defendant is claiming that the protection against retaliation prescribed in 42 USC § 12203 only applies against the defendants being sued, and their privies. According to the Defendant, this means that independent third parties with no formal connections to those defendants may harass and retaliate against the plaintiff to their hearts' content.

65.     THAT IS JUST DUMB!!!

66.     The plain text of 42 USC § 12203(a) (that is … *plain text*, so no case law necessary) states, word-for-word verbatim, the following:

> "*No* person shall discriminate against *any* individual because such individual has opposed *any* act or practice made unlawful by this chapter or because such individual made *a* charge, testified, assisted, or participated in *any* manner in *an* investigation, proceeding, or hearing under this chapter."
> (Areas of interest bolded, italicized, and underlined for emphasis)

67.     The Defendant's patently frivolous attempt to convince the court that they are allowed to harass Plaintiff with litigation in order to persecute Plaintiff for his own litigation, simply because they were not previously involved in the discrimination, is a blatant violation of Fed.R.Civ.P. 11(b)(2), and the Defendant should be grossly sanctioned accordingly.

### Defendant's adverse action is indeed sufficiently chilling.

68.     The Defendant correctly asserts that an adverse action must be one that "well might have dissuaded a reasonable [individual] from making or supporting a charge of discrimination." However, this is where the Defendant's accuracies end.

69.     The Defendant is, once again, blatantly lying when it states that Plaintiff has not alleged such a criterion. This is not a mere mistake or error; they Defendant is simply lying.

70.    Plaintiff has alleged that the lawsuit filed against him was a part of a continuing,

perpetual pattern of persecution and harassment that the government of Boone County has

perpetrated onto Plaintiff. If Plaintiff is able to prove that, then the lawsuit the Defendant filed

against him would be presumed to have the same chilling effect as the entire pattern of

persecution which the lawsuit was a part of!

71.    Plaintiff does not allege that the lawsuit was a single, isolated incident. It is a part of a

whole. Plaintiff is seeking a judgment to cause the harassment to stop, regardless of individual

actors, since Plaintiff is convinced

72.    The Defendant denies any involvement in this matter. Of course it denies any

involvement int his matter. Who in their right mind would freely *admit* to any involvement in

this matter? The mere fact that the Defendant denies the allegations does not entitle them to

summary dismissal with prejudice; see ¶¶ 1-5 of this Complaint for details.

**Plaintiff has, indeed, sufficiently alleged causal connection.**

73.    Plaintiff has alleged sufficient facts to show that the Defendant had at least some

summary knowledge of the protected activity.

74.    First of all, the precedent of *Simmons v. Simmons Foods, Inc.* is not applicable here in the

first place. That precedent concerns the Water Pollution Control Act and the Solid Waste

Disposal Act. The current proceeding concerns the Americans with Disabilities Act.

75.    Second, the case law they are citing references a jury trial, meaning that this is an

affirmative defense on the merits, not an essential element that the Plaintiff must plead in his

Complaint.

76.    Third, even if Plaintiff is required to plead it in his Complaint, that would, at best, be

procedural law, and as Plaintiff has established, federal courts always follow their own

procedural law, regardless of applicable substantive law. Thus, the 8th Circuit's case law would be of no value here.

77.     Fourth, even if 4th Circuit case law were to require Plaintiff to plead "summary knowledge" in his Complaint, Plaintiff still has plead sufficient facts. Think about it: If they were contacted by the government of Boone County, Arkansas (of course they deny it, but that doesn't mean anything; see ¶ 1-5 and ¶ 70) and asked to file this lawsuit to harass Plaintiff, it stands to reason that they either A) knew about the protected activity, B) went out of their way to remain willfully ignorant of the protected activity, and/or C) if they knew about the protected activity, it still would not have dissuaded them from instituting this harassing litigation. In the event of either B or C, the Court should hold the element of "knowledge of protected activity" as unnecessary, under the doctrine of *reductio ad absurdum*.

78.     That is the last of the Defendant's patently frivolous arguments which were done in a blatant attempt to block Plaintiff's court access rights, since they know he'll win if given his proper day in court.

## CONCLUSION

79.     To wrap this Response up, let us recap the points:

        (a)     The Defendant is asking the Court to violate literally CENTURIES of binding precedent, by asking the Court to summarily judge the weight of their evidence which, by their own admission, was never presented to Plaintiff for discovery or cross examination until that point.

        (b)     It is indeed highly disputed whether Plaintiff ever signed any contract with the Defendant. The handwriting is off, and a disinterested witness has vouched that Plaintiff never borrowed money from the Defendant.

(c)     Of course, saying that "the handwriting is off" rests on the assumption that the handwriting can even be determined from the Defendant's smudgy paper.  The fact that these two pages (the most important page of all) are the only pages out of 50 that are too smudgy to read suggests they may have deliberately smudged it to make the falsifications harder to detect.

(d)     Furthermore, there is reason – actual reason, not just paranoid delusions or mere speculation – to suspect that the Defendant got all these data points concerning Plaintiff from illicit sources (such as … oh, I don't know … the *government officials who hired them*?!)

(e)     With the authenticity of this signature disputed, Plaintiff is entitled to his day in court concerning the elements of malice and lack of probable cause.

(f)     Plaintiff has asked for injunctive relief under 42 USC § 12188.

(g)     Plaintiff is entitled to recover damages under 42 USC § 12188 if he can prove intent.

(h)     The Defendant's absolutely ludicrous attempt to argue that they are allowed to retaliate against Plaintiff, simply because they were never made defendants in any of Plaintiff's previous lawsuits, is patently frivolous and deserving of sanctions under Fed.R.Civ.P. 11.

(i)     The adverse action complained about in the Complaint has a sufficient chilling effect, so long as it was part of an existing pattern of harassment that is, itself, sufficiently chilling.

(j)     Plaintiff has alleged sufficient criteria for the element of causal connection.  Under the facts pleaded, the Defendant either knew about the protected activity, or the Defendant must have ignored it.

(k)     Therefore, Plaintiff is entitled to proceed on this matter.

80.     Wherefore, premises considered, Plaintiff respectfully requests that the Defendant's

Motion for Summary Judgment be denied, costs incurred be awarded, and any other relief to which Plaintiff may be entitled.

So requested on this, the 5th day of November, 2014.

David Stebbins
123 W. Ridge St.,
APT D
Harrison, AR 72601
870-204-6516
stebbinsd@yahoo.com