UNTED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

DAVID A. STEBBINS                                                    PLAINTIFF

VS                              CASE NO. 1:14-cv-00961

EDUCAP, INC.                                                         DEFENDANT

## AFFIDAVIT OF DAVID STEBBINS

Comes now, *pro se* Plaintiff David Stebbins, who hereby submits the following Affidavit in the above-styled action. I do solemnly swear, under penalty of perjury, that the following statements are, to the best of my knowledge, the truth, the whole truth, and nothing but the truth, so help me God.

1. I reside at the address of 123 W. Ridge St., APT D, Harrison, AR 72601. The city of Harrison, Arkansas is located inside Boone County, Arkansas.

2. I have Asperger Syndrome, a disability which severely hinders his ability to socialize with others, make friends, get jobs, get a girlfriend, etc.

3. Because this disability is not obvious (like blindness or paraplegia), many persons do not realize that it even IS a disability, and thus, they believe that they have no obligation under the Americans with Disabilities Act to provide reasonable accommodations for it. This leads to many times when I do not get the reasonable accommodations I am supposed to be legally entitled to.

4. Thus, I have been faced, many many times, with two options: Either suck it up and let people do whatever they want to me and walk all over me, or file suit in federal court. I quickly decided that the former was 100% out of the question.

5. I can not afford to hire an attorney on an hourly basis, and because discrimination is an extremely complication area of law (indeed, the Defendant's mindset is an essential element), it is extremely rare for an attorney to take a case on contingency, especially when the Defendants

*Exh. B*

in those cases honestly believe that they were doing nothing wrong.

6. Thus, Plaintiff had no choice but to represent himself pro se in these matters.

7. My decision to represent myself did not bode well with the Powers that Be here in Boone County, Arkasnas, who believe that a person should not have the legal or constitutional right to represent themselves.

8. Thus, because the government of Boone County considers itself above the law, they proceeded, in the year of 2011, to frame me for a knife attack against my father - who was working in cahoots with the government - so that they could have me arrested.

9. Specifically, my father cut himself with a knife, and then told the police that I was the one who attacked him over a petty disagreement. I got arrested for this accusation, and the prosecution never even *attempted* to secure fingerprints off of the knife that was allegedly used.

10. This way, I would experience incarceration for the first time in his life, so that Prosecuting Attorney Wes Bradford - also a part of the conspiracy - could use the threat of additional incarceration to coerce me into ceasing and desisting his pro se lawsuits.

11. On February 8, 2013, I agreed to one (1) year of probation, and agreed to make payments of $35 per month pursuant to this probation, in exchange for dismissal of his charges after probation was completed.

12. While I was in pre-trial incarceration, I was subjected to extreme bouts of harassment and bullying by a jail guard by the name of "Jason Jones," a man whose part time business I had filed a lawsuit against (Case No. 10-3041). Examples of Jones' conduct include, without limitation:

  (a) Constantly spewing incoherent jibberish at me through the jail's intercom system, not because his sayings actually meant anything, but rather, simply because I was trying to take a nap, and he was trying to inflict upon me the physical injury of "sleep deprivation."

  (b) Threatening (at the top of his lungs, to boot) to make sure that I would not be able to

even so much as crawl out of the jail, if I tried to sue him again. He yelled this threat so loud that the Jail Administrator simply had to have heard the yelling, but still consciously chose to do nothing about.

(c) Instructing other inmates to harass me by spraying me in the face with Windex, mopping around my feet, and verbally harassing me.

(d) The inmates – acting under Jason Jones' instruction – threw a mop bucket strainer in my face.

13. All throughout this endeavor, I was legitimately scared for my life. I did not know if I was going to make it out of there alive, let alone in one piece. The mop bucket being thrown in my face ended up breaking my glasses (causing me the serious physical injury of "blindness") and cutting my face in two places. To this day, I can still rub my finger over the area where those cuts were, and feel a small bump, even though you can't see it.

14. I currently has three (3) pro se lawsuits pending in federal and Arkansas State courts directly addressing this conspiracy to have me arrested: A) Case No. 12-3022 in the U. S. District Court for the Western District of Arkansas, B) Case No. 14-0227 in the U.S. District Court for the Eastern District of Arkansas, and C) Case No. CV2012-85-4 in the Circuit Court of Boone County, Arkansas.

15. I have never done business with, or even heard of, the Defendant prior to them suing me in the Boone County Circuit Court.

16. Near either the end of February, or beginning of March, in the year 2014, I was contacted by the Defendant, who were acting through a law firm by the name of Hood & Stacy, P.A., and asked to pay more than $2,000 to settle out of court some debt I had never entered into. I ignored this "offer," which effectively amounted to nothing more than extortion, seeing as how I cannot be made to repay a debt that I never borrowed.

17. On April 2, 2014, my mother – one Rita Stebbins by name – came to my apartment and gave me a stack of legal papers. They contained a summons and complaint by the Defendant, signed by their counsel, suing me for more than $4,400. Oddly enough, they had a whopping three lawyers for a case with less than five thousand dollars in dispute. Strange.

18. Anyway this Complaint says that I was paying $35 a month, but stopped making the payments in March of 2013, which is EXACTLY the amount of my probation payments and EXACTLY the time when my first probation payment was due.

19. The Complaint contained two attachments. Exhibit A to the Complaint appeared, on its face, to be the first three pages of a contract. However, the contract was missing the space for a debtor's signature. I assume that was meant to be on Page 4 of the contract, but the Defendant did not attach that page, for whatever reason.

20. Thinking to myself, I reasoned the following: Because I had never heard of these people, prior to being served with their settlement offer, I knew this debt must be fake. Their failure to attach any contract bearing my signature only further confirmed that.

21. However, the fact that they knew EXACTLY the time and amount of my probation payments meant something much darker was at work: They were scouting me. They were *stalking* me – the way a predator stalks its prey – to learn things about me so they could dig up this dirt on me, before even filing suit!

22. Like a truly *professional* group of lawsuit sharks!

23. Thinking this, the flood of horrible memories that I had tried to put behind me[1] started flooding back into my brain. I started having flashbacks of times when I was running for my life (literally), and for a brief moment, I almost lifted my hands in front of my face, because I could see that mop bucket about to hit me in the face, again! It was over after about ten minutes, and

---

[1] Most PTSD medical experts agree that one of the first step to recovering from a traumatic event is to think about it as infrequently as possible.

thank God there was nobody else in my apartment to see me in this pitiful state, but the fact that the Defendant caused me to remember it for even a second should make them liable.

24. Thus, on May 5, 2014, I filed a Motion to Dismiss, alleging two things: 1) Insufficient service of process, and 2) the Complaint did not contain a copy of any written instrument that bore my signature, and thus the Complaint was filed under Arkansas Rule of Civil Procedure 10(d).

25. My guess is that the Defendant was expecting the amount in controversy to be small enough that obtaining the services of an attorney would be even more expensive than simply settling out of court, but large enough that settlement was still favorable. Of course, unbeknownst to them at the time (probably because the Boone County Government, thinking that I was just a "vexatious" or "abusive" filer, never warned Educap about this), I had a trump card: I am one of the few *pro se* litigants who actually knows what he's doing! Thus, I didn't need an expensive, three thousand dollar attorney! Just like how some people can fix their own cars for much cheaper than the cost of taking the car to a mechanic, I myself was able to save a bundle of money by representing myself in the proceedings, to the pint where fighting rather than settling was financially plausible.

26. When they realized that *this* particular Pro Se litigant actually knew proper litigation procedure, they quickly backed off, realizing that the fight they were in for was not worth the small amount of money they have requested, even if they stood a ghost of a chance at winning the case (which they didn't).

27. I proceeded to file suit in this court for malicious prosecution, and also, for continuing the pattern of harassment that my local government officials began.

28. I did a google search to see if there was any dirt I could dig up on the Defendant, and I found not one, but two things that will be admissible under Federal Rule of Evidence #404(b) to

prove that they are a greedy, money-grubbing monolith who only cares about how much money they make, and don't give a rat's arse what laws they break or who they walk all over in order to get that money.

   (a)   They used their profits to pay extremely lavish salaries and benefits to their executives, including million-dollar-a-year salaries and a $30 million private jet. This, in and of itself, is not a bad thing. After all, profits are the entire foundation of American capitalism (also sometimes known, affectionately, as the "American Dream"). However, the allegations state that Educap has acted under the pretense that they are a non-profit charity in order to avoid paying income taxes, simply because they saw it as an excuse to not pay income taxes and instead hoard that money for themselves. The IRS never publicly released their ultimate decision on the matter, but a Congressional investigation that *was* public record ultimately resulted in Educap selling off a good chunk of its assets, suggesting that the Defendant may have believed there to be an air of truth to the allegations.

   (b)   In 2007, the New York Attorney General announced investigations of many student loan creditors, including Educap, concerning allegations of kickbacks and other forms of corruption between student loan lenders and institutions of higher learning. In my opinion, this lends credence to my suspicion that Educap acted pursuant to the requests of my local government officials, since they already have an existing "you scratch my back, I scratch yours" type of relationship with many public (and thus, government-owned) universities!

29.   Now that the Defendant has produced a contract that purports, on its face, to have my signature, I can now say, with 100% certainty, that they indeed just made it up. In Doc. 27, Exhibit 1, Page 6, the Defendant makes a shabby attempt to pretend like I signed a contract with them. However, that is not my handwriting. My handwriting has appeared in all the documents I've filed with the Court by this point, and it will appear at the end of this affidavit. So, the Court

will have something to compare the Defendant's exhibit to.

30. So, not only has the Defendant completely fabricated my signature, but there is evidence to show a *pattern* of this sort of conduct (that is... wealth secured through illicit means).

31. The Defendant needs to be taught a lesson about making up garbage to sue people over, just to get money. Furthermore, the Defendant acted in a way that caused me to remember the worst period of my entire life, and thus should be made to compensate me for that brief period of absolute terror. Thus, I do believe that $250,000 in emotional damages, and $10,000,000 in punitive damages (or $16,472,733.56, after adjusting for inflation from the year 1993, which is the year the Supreme Court issued the case law affirming $10 million damage awards for cases of extremely egregious conduct), is a reasonable amount.

I, the undersigned, do hereby swear, under penalty of perjury, that the above-mentioned facts are, to the best of my knowledge, the truth, the whole truth, and nothing but the truth, so help me God.

_[signature]_
Signature

## ACKNOWLEDGEMENT

On this day before the undersigned, a Notary Public, duly qualified and acting in and for the county and state aforesaid personally appeared **DAVID ANTHONY STEBBINS**, know to me or satisfactorily proven, whose name appears as AFFIANT in the foregoing instrument, and stated that he/she had executed the same for the uses and purposes therein stated.

IN WITNESS WHEREOF, I have hereunto set my hand and seal this _4_ th day of _Nov_____, 2014.

NOTARY PUBLIC: _Leslie C. Hunt_
My Commission Expires:

_8-21-22_
Seal:

[Notary Seal: STATE OF ARKANSAS, LESLIE C. HUNT, NOTARY PUBLIC, COMM. No. 12366807, My Comm. Expires August 21, 2022, BOONE COUNTY]